Good morning. My name is John Groh and I represent the appellant at Westmark Development. I would like to point out that Alice Dobson is here. She's one of the clients and she is now 95 years old and has made every court appearance since this case was filed when she was a spring chicken of 81, I believe. I am going to attempt to reserve three minutes for rebuttal. All right. In this case, there's very little disagreement as to the law, but there is disagreement as to how the law is to be applied to the facts of this case. Washington law does apply to a tolling agreement. It is a contract. The parties are in agreement on that basic law. And that brings us to Berg v. Hudson, which is the primary Washington case as well as the Hearst Communications case. And it's very clear in Washington that you must consider the context of a contract, in this case the tolling agreement, to determine the intent. And at page 14 of our reply brief, we provided the quotation from Hearst Communications which says, intent cannot be interpreted without examining the context. You have to consider the context. And that is what the district court judge did not do. The types of context to consider are laid out in the briefs and laid out in those appellate cases. You have to consider first the subject matter. What are we dealing with? Well, here the subject matter is clear. We are dealing with a tolling agreement. It says so right on the agreement itself. It is a tolling agreement. That's not terribly helpful with regard to the particular issue here because clearly there was a tolling with regard to every other defendant. In other words, that was quite specific. The problem was with regard to the city of Burien, right? Well, I wouldn't leap straight to that. What you're really getting at, I think, is that paragraph 4 has been described as being the tolling agreement. And our position is no, it is paragraph 3. I understand that, but I was simply saying that the fact that this isn't a nullity case where this wouldn't be a tolling agreement at all if he weren't right. It would still be a tolling agreement. Well, yes. But not with regard to the city. You have to look. The fact that it's a tolling agreement indicates, of course, what the objective and what the subject matter is. But let's get right to the heart of it because I think your question gets at that. Paragraph 3 states plaintiffs may refile their claims after the state law claims are resolved. And it says may refile their claims against all or some, all or some of the 1983 defendants. That is Burien or the individual defendants. That is what is authorized in paragraph 3. Now, if you go to paragraph 4, if paragraph 4 is the paragraph that allows tolling, then the question is when does the tolling period end if you're looking at paragraph 4. And when you go to paragraph 4, there is no time frame for the termination of the tolling period. The only place you get a time frame for termination of tolling is in paragraph 3. And that paragraph very clearly authorizes refiling against all or some, Burien or the individual defendants. And the real problem is this is a not very well drafted piece of paper, to put it mildly. It's not. And the result is that although all of your explanations make perfect sense, it's also true that refile doesn't necessarily mean and it's going to be a valid lawsuit, although it would be kind of silly because what's the point of refiling a feudal lawsuit? In other words, it says refile. Yes. That doesn't mean that it won't be dismissed the next day for not meeting the statute of limitations. If there's a legitimate statute of limitations contention, of course our position is that as to Burien, it was filed in 1996. And Burien has not taken any position that the statute of limitations was not satisfied with that filing. You're relying on the refile and not on the without prejudice language? Refile and without prejudice. But refile, the whole idea of authorizing a refiling was to provide that timeframe, refile after the state court proceedings are done. And if paragraph three is to have effect as to the individual defendants of providing a timeframe for when the refiling needs to occur after the completion of the state court proceedings, then it must have the same effect with respect to Burien. If it's going to be effective as to the individual defendants, paragraph three, it has to be effective as to the city of Burien as well because it states refile against all or some. By the way, you didn't refile against the individual defendants, did you? We chose not to. Why not? Just to protect yourself. Wouldn't they get indemnified by the city? Well, frankly, we were not expecting a motion to dismiss based on the tolling agreement. And I think the individual defendants, they have some better position that perhaps a regular statute of limitations may have expired as to them because they were sued in 2004. We would have to go through a lot of effort to show factually that waiting until 2004 was because of that settlement. And you knew that when you drafted this tolling agreement, right? I don't know who drafted it. If you drafted it. No, I didn't. Actually, the attorney representing Burien drafted it, and it was signed by John Ferguson who was representing Westmark. Wait a minute. The attorney representing the city of Burien drafted this tolling agreement? That's right. And John Ferguson, the attorney for Westmark, agreed with it because their intent was clear. They knew what they were doing. They were intending to just simply toll this for the benefit of the city attorney. Oh, you mean the same attorney representing the city and the individual defendants? No, Mr. Balasina was representing the city and the individual defendants. Right. The city attorney, Mr. Kenyon, had requested of Westmark that if they could dismiss the case temporarily while it was stayed anyway because nothing was going to happen so that it wouldn't impair his ability to seek extension of credit. Right. And Westmark said, well, okay, that's a reasonable request. We'll do that. We'll just have a tolling agreement. And when we're all done with the state court proceedings, just as would have happened under the stay, then we'll just refile and away we go. Now, wait a minute. I have a similar question to Judge Tshima. My understanding is this was initiated by one of the individual defendants. Yes, Mr. Kenyon. You just said it was the city of Burien. It was initiated. The request came from Mr. Kenyon, who was the city attorney, but he was represented by Mr. Balasina. So Mr. Balasina drafted it. That's why I say it was not drafted by the city. It was drafted by Kenyon's lawyer, not by the city's lawyer. Yes, city attorney. Well, you said it was drafted by Burien. No, I said it was drafted by Mr. Balasina, who represented the individual defendants. And I don't know if he was also representing the city at that time or not. He was the former city attorney at the time, wasn't he? Kenyon. Kenyon. I believe he stayed with the city attorney. He was still one of the city attorneys. He wasn't representing me. He was not. Kenyon was Kenyon. He's the defendant, right? Individual defendant. He was one of the individual defendants. Okay, and was he also the city attorney at the time and therefore representing the city? No. He was involved in representing the city, yes. In this case? Yes. All right. Okay, well, maybe they can sort it out. All right, you may want to save the rest of your time. I'd like to save some time. Thank you. Good morning. May it please the Court, Chris Boccia with Kenyon Deason representing the appellees, City of Burien. I would just like to clarify that Mr. Bolasina did not represent the City of Burien. That's one of the issues here is that the City of Burien and the subjective evidence presented as extrinsic evidence makes no reference to any thoughts  The letter that was attached to Mr. Ferguson's affidavit is a letter sending a copy of an agreement that is not before the Court for signature by Mr. Ryder, who represented the City of Burien. You see, my question to you is if, as you say, this agreement has absolutely no effect on the city, why would the city even, you know, be a party to it and sign it? What's the purpose? I think that's a good question. There are a lot of good questions here. Why would you sign it? I can't answer that. The record was not developed below in terms of the context in which this agreement was signed. The original motion was a 12B6 motion brought on the record. The only extrinsic evidence that was offered other than the content of the document itself was the evidence presented by the affidavit of Mr. Ferguson. So the record is not developed with regard to the context, and I understand there's You think it should be? Well, I don't think it should be, and let me tell you why. One of the things that counsel has not argued and only mentions briefly in their reply is the issue that we brought up, and that is that this is a waiver of the affirmative right of the City of Burien. A waiver? It's a tolling. It's not a statutory and equitable tolling. It's an agreement by the City of Burien. If you agree with counsel's view that this is an agreement that tolls the running of the statute of limitations, it can only toll if the City of Burien agreed that it would. Well, it did. What it says is they're defined as one of the 1983 defendants, and they signed it. So they're one of the defendants, and it says specifically plaintiffs may refile their 1983 claims against all or some of the Section 1983 defendants against the City of Burien. Okay, so then you go down and you look in paragraph 4, and it carves out the City of Burien as to the filing date, but the City of Burien wasn't sued on October 4, 2004. Only the individual defendants were, and the argument for that is, as I understand it, is that there was some debate about whether that was timely or not, but the idea of putting them in as subject to a tolling agreement and then taking them out of a tolling agreement would mean that the city could be sued, but it would have to be sued before the state proceedings were either litigated to conclusion or settled. That's your position. Well, our position is that this document does not represent a clear and unequivocal and definite and express statement of the City of Burien's intent to Well, but you just said that there's a lot of information that isn't in the record, and as I understand Washington law, it does look to the context. So at the best, it seems, you get is kick it back to the district court so you can make your case as to why all of this language, this structure, somehow meant that they go for a tolling agreement to accommodate the former city attorney on his personal credit liability and they would have let the city sit by the sidelines while they're negotiating with the city trying to get this thing settled and should have filed suit because this really didn't mean anything. On the face of it, it doesn't make sense. The court is making a number of assumptions about what the purpose of this agreement is. Well, I am because the district court didn't, as far as I come from California, and you have to go through this elaborate procedure where you have to create an ambiguity and so on and so forth. But once you get to the extrinsic evidence, it does help find out what people intended. And I don't think there was Well, what it does help the court do is to find out the intent of the language that's in the document and not import a meaning that's not existing in the document. There's a couple of things I'd like to point out. First of all, after the recitals in the sentence that's prefiguratory to numbered paragraphs 1, 2, 3, and 4, what it says is after reviewing and considering the district court's order declining supplemental jurisdiction, the parties agree as follows. That's an expression of the parties' content. That's what they considered, not that Mr. Kenyon asked for a dismissal in this case so that he could get financing. There's nothing in the language of the document that says that. But you look at the operative. Those are, you know, that's sort of the boilerplate. You get down to the nuts and bolts. And I just, without looking at context, I just walked through this thing trying to understand. I used to do tolling agreements. I agree it's not well drafted. But I don't understand why you put in the city as a 1983 defendant and say they can be sued if it doesn't include, when it's said to be a tolling agreement, a tolling agreement that affects the city. There is ambiguity, perhaps, as to what paragraph 4 means. But it doesn't sound to me like it intended to remove the fact that the city had been sued, what, four years or more before the other one. I think I can give an explanation. Good. Please. You may not like it, but I can give it. There's a couple of things. First of all, with regard to the definite period of time, Mr. Groen argues that numbered paragraph 3 suggests that there is a limitation. But if you accept the argument that the effect of this agreement is that when the parties refile their claims, they're treated as having been filed at some prior period of time for the City Bureau in 1996, for the individual it's 2004, there, in effect, is no definite period of time. Because once they refile their claims, whether it's two years, three years, 10 years, 100 years later, those filing periods are deemed to relate back. There is no period of time in which the plaintiffs or the appellants in this case. The clear implication is that it's when the lawsuit, state lawsuit, is finished. It says that they may refile any time after that. Any time. It doesn't say any time. It says after. Correct. You're reading in any time. Well, it says after. I don't know how that's, it's not limited in the agreement. After they're resolved. After they're resolved by trial or settlement. One year later, 10 years later, 100 years later. You could argue about that if they were to try to argue that it was any time. But they're not arguing it's any time. They're arguing that it was cut off the date that the state lawsuit was resolved. Sure. And our argument is that the law in Washington is that it must be for a definite period of time. If you look at the case, for example, the bakery case that established that law in Washington, there was a very clear, definite, specific period of time in which those parties may file that was set forth in that document. There's nothing in here other than to say they may be filed after. But that's an interpretive question. In other words, whether it's definite or isn't definite depends on how you read that provision. All right? So it's not a question of whether it's definite. It's a question of how you read the provision. And that's a resolvable question. If it said, if the time was cut off the date that the state's law, that the state case was finished, would that be a definite period of time? It's a tolling agreement. It's a tolling end to the day the state case was resolved. Is that definite? It would not because of the way that it's written. It says that when it's refiled, it relates back to a particular period of time. Now, that's not what I'm asking you. If it were interpreted to mean after, meaning as of that day, would that be a definite period of time? I suppose it would be. All right. So it is an interpretive question. Is that what it means? Does after mean as of that day? Or does it mean any time after? It may be interpreted, but the rule in Washington is that if there's a waiver, if there's a tolling, then it must be clear, it must be unequivocal in this case. But it doesn't actually, as I understand Washington law in that, it can be waived expressly or clearly to be implied. It doesn't have to be expressed, right? I disagree. I think that's it. Well, it says right here, I'm reading a Washington case, which is Marshall Wells Hardware versus Title Guarantee. And that's what it says. It has been held that the statute of limitations will run unless waived by an agreement expressly or clearly to be implied. But this is not even a waiver. It's only a tolling, right? Substantively, I don't see any difference. The parties would have to agree that that period of time would toll if you're not waiving your right to bring your statute of limitations. Are you saying tolling and waiver are synonymous words? In this context, they are because this is not a statutory waiver or an equitable waiver. And one other thing is, why doesn't Paragraph 4 actually support the appellants in that by, the one thing that seems clear from it is that this is a tolling agreement. In other words, with regard to the other defendants other than the city of Burien, it states a date as of which they will be deemed to have filed their claims, meaning not later than that, meaning that this is a tolling agreement. Well, again, I go back to the idea that if you're going to look at, in the context of this case, and look at the context of the agreement, you need to have objective evidence that manifests in the party's mutual intent. We don't have that here. We have assumptions about what the party's intent is. Our argument is that the intent was in response to the court's order dismissing or declining supplemental jurisdiction. Ultimately, is your argument that this is an agreement that's so plain that no contextual evidence is relevant, or is it that the contextual evidence supports you, or is it that there is a failure of contextual evidence on this part of the appellant? Our argument, essentially, is that there's no reasonable interpretation of this agreement that shows that there's a clear and unequivocal waiver by the city of Burien. Okay. All right. Thank you. Thank you. Excuse me. This can really boil down to pretty simple analysis. The effect of the city's argument, and of the trial court's ruling, is that Westmark would have had to have refiled its claim against Burien before the state proceedings were even concluded, because three years from that date, using the district court's analysis, was up in February of 2008 and, of course, 2009, and, of course, the state proceedings were not finished until the end of September. And so Paragraph 3 is simply meaningless. It means that Westmark is put into an impossible position under that kind of interpretation. That makes absolutely no sense, and that completely undermines the whole purpose and objective of the tolling agreement. That's what at bottom is really wrong with that type of analysis. With respect to the October date, yes, Paragraph 4 carves out the specific date for those individuals and says that date, October 4, 2004, will be the filing date for those individuals. Why that date? Because that was the actual filing date. That's when they were brought into the case. Burien, however, was sued in 1996, much earlier. Of course, they're not going to be subject to the 2004 date. Our position is that the statute of limitations was met, it was complied with way back in 1996, and this is simply tolling during this time period when this case was going before the state court proceedings. This only happened to accommodate Mr. Kenyon's request, and the effect on Westmark was supposed to be exactly the same as the effect of a stay. Nothing was going to happen in federal court, so it made no difference to Westmark to accommodate his request, dismiss the case with the tolling agreement, see what happens at the state court, and then bring it back if there was a desire to once the state court proceedings were done. Just like as under the stay, that's what this is all about. Thank you very much. Thank you, Bill. Thank you, counsel. The case is submitted.
judges: Tashima, Fisher, Berzon